# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| REDI-DATA, INC., <br><br> Plaintiff, <br> v. <br><br> THE SPAMHAUS PROJECT a/k/a THE SPAMHAUS PROJECT LTD., <br><br> Defendant. | CIVIL CASE NO.: <br><br><br> **COMPLAINT** |

Plaintiff, Redi-Data, Inc. ("Redi"), by way of this complaint against defendant, The Spamhaus Project a/k/a The Spamhaus Project Ltd. ("Spamhaus"), alleges and states as follows:

## INTRODUCTION

1. This action concerns a foreign company's abuse of power and deliberate indifference to the rights and reputation of a domestic corporation. As described in more detail below, Redi is a New Jersey corporation that assists certain life science companies with marketing medical products to doctors and mid-level practitioners through emails and postal mailings that are approved by the legal departments of the client-companies, the American Medical Association, and the United States Food and Drug Administration, to name a few. In addition, Redi provides important drug information such as recall and warning communications to its clients. Redi utilizes two domain names ("redimail.com" and "redidata.com") and related IP addresses to market their services to agencies, life science companies, hospitals, universities and other companies benefit from these services.

2. Spamhaus, in contrast, is a foreign company that, among other things, creates block lists ("SBL's" or "DBL's") that essentially blacklist and block email communications from companies suspected of engaging in improper and/or illegal behavior (*e.g.*, trafficking in malware and/or viruses, engaging in phishing, etc.). When marketing domains and Internet Protocol ("IP")

addresses are blocked, they inhibit a company's ability to market and support customers. The company loses its ability to maintain the hosting of its website or to have two-way email communication with its customers. IP blocklists also impact a company's ability to deploy lawful email communications.

3. On April 5, 2016, Spamhaus added Redi IP addresses to a blocklist (Spamhaus Blocklist "SBL"), which resulted in a shutdown of Redi's website and email traffic. The trigger for this event is unknown since all Redi email campaigns are domestic, approved, and lawful. Redi notified Spamhaus of the error but it responded "[n]either spamming nor selling lists to others so that they can SPAM them is remotely acceptable to Spamhaus."

4. In April 2018, Spamhaus added Redi's two domain names to another of its block lists. There was no reason or justification for this addition – Redi is not engaged in any of the activity that would land it on such a list. Again, the result was immediate and catastrophic: Redi's email communications were "redirected" to spam and/or junk folders and/or otherwise rendered undeliverable. Redi immediately notified Spamhaus of the error, which resulted in Spamhaus removing the domain names from its block list for a matter of days before relisting them.

5. Since that time, and despite repeated requests that Spamhaus correct its errors (including, without limitation, a June 19, 2018 demand letter), Spamhaus refuses to remove the "redimail.com" and "redidata.com" domain names and related IP's from its historical block lists and correct such listings. In fact, Spamhaus even refuses to engage in any discussions about same. As a result, Redi has suffered, and continues to suffer, irreparable and ongoing injuries, such as lost good will, a tarnished reputation, lost opportunities, lost customers, and lost profits. With no other option, Redi now brings this lawsuit and seeks equitable and monetary relief designed to end to Spamhaus' refusal to rectify an inequitable situation it created.

## THE PARTIES

6. Redi is a corporation incorporated in New Jersey that maintains a principal place of business in Fairfield, New Jersey.

7. Upon information and belief, Spamhaus is a company limited by guarantee and organized under the laws of the United Kingdom that maintains principal places of business in both London, England (26 York Street, London W1U 6PZ United Kingdom) and Geneva, Switzerland (18 Avenue Louis Casai CH-1209 Geneva, Switzerland). Upon further information and belief, Spamhaus is not a citizen of New Jersey.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a) as the parties in this matter are completely diverse (Spamhaus is, upon information and belief, a citizen of a foreign state while Redi is a citizen of New Jersey) and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Upon information and belief, this Court can exercise personal jurisdiction over Spamhaus as this action arises out or, or otherwise relates to, activities Spamhaus directed to and engaged in within New Jersey. Upon information and belief, Spamhaus is engaged in continuous activities purposely directed to New Jersey, which has a significant impact on commerce, business, and transactions occurring within the State. These activities form the predicate for this complaint. Upon further information and belief, Spamhaus does business in New Jersey by marketing its services to companies located within New Jersey.

10. Furthermore, as described below, personal jurisdiction is also appropriate given the tortious activity Spamhaus directed specifically against a New Jersey corporation doing business in New Jersey.

11. Venue is properly laid within the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1391(b) because Redi resides within this judicial district and a substantial part of the events and omissions that form the basis of this complaint occurred within this judicial district.

<b><u>FACTUAL ALLEGATIONS COMMON TO ALL COUNTS</u></b>

**<u>Redi</u>**

12. As alleged above, Redi is a New Jersey corporation that (among other things) offers a full suite of list, mailing, and data services to customers.

13. Specifically, and of relevance to this lawsuit, Redi provides direct mail and email deployment services to life science clients and their agencies in the medical profession located only in the United States.

14. Stated another way, Redi is in the business of providing its customers with lawful direct mail and email communications about medications and medical products to U.S.-based healthcare professionals.

15. Thus, Redi's business is largely, if not entirely, dependent on its ability to assist clients with gathering and disseminating information through email to certain specific and targeted audiences.

16. To effectuate its operations, Redi is the owner of the domain names "redimail.com" and "redidata.com," as well as their related IP addresses, both of which are at issue in this case. The "Redi-Mail" utilizes postal communications while "Redi-Data" primarily utilizes electronic communication.

17. Redi's postal list consists in part, of licensed American Medical Association and the American Osteopathic Association and American Dental Association lists, which are member-only lists to which emails are also sent.

18. The content of these emails and postal communications are monitored and approved, as appropriate, by the various member associations, the United States Food and Drug Administration, an internal team at Redi, and the legal departments (medical affairs) of the life sciences clients sponsoring the communication.

19. Indeed, Redi prides itself on complying with all requirements and obligations set forth in the U.S. CAN-SPAM Act, 15 U.S.C. § 7701, *et seq*.

20. As is clear from the Terms and Conditions of Redi's website, its website is for use only "in accordance with the laws of the United States of America, as well as any other applicable state, municipal or local laws."

21. Other than by Spamhaus, Redi has neither been accused of sending spam nor removed from any internet service provider for violating any authorized use or services policies.

**Spamhaus**

22. Spamhaus markets itself on its website as a nonprofit organization that tracks spam and related cyber threats such as phishing, malware, and botnets.

23. As part of this alleged crusade, Spamhaus maintains "block lists" that internet service providers and providers of hosting services reference and use to block or prevent emails from being received by Spamhaus users.

24. Upon information and belief, one of those automated lists is a Domain Block List (hereinafter, the "DBL"). This list is historical in nature, so even if removed, a record of the block remains.

25. As alleged on Spamhaus' website, "[t]he Spamhaus DBL is a list of domain names with poor reputations[,]" which reputations are allegedly "calculated from many factors[.]" *See* Spamhaus, *The Domain Block List (DBL)*, https://www.spamhaus.org/dbl/ (last visited Nov. 30, 2020).

26. Allegedly, "[t]he DBL includes domains which are used in unsolicited bulk email including phishing, fraud, '419,' or sending or hosting malware or viruses, as well as other domains with poor reputation due to many heuristics." *Id.*

27. As further alleged on Spamhaus' website, once a domain name is listed on the DBL, its software "scan[s] email headers and message bodies…to identify, classify, or reject mail containing DBL-listed domains." *Id.*

28. Upon information and belief, "[m]ost DBL listings occur automatically, although where necessary Spamhaus researchers will add or remove listings manually." *Id.*

29. Upon further information and belief, to remove a domain name from the DBL, an owner of the domain name can complete a form on Spamhaus' website in the so-called "Blocklist Removal Center." However, the historical record remains and Spamhaus expands and refers to such list when they relist IP's or domains.

30. According to Spamhaus' website, a removal request should be processed immediately or typically within 24 hours. *See* Spamhaus, *Frequently Asked Questions (FAQ)*, https://www.spamhaus.org/faq/section/Spamhaus%20DBL#275 (last visited Nov. 30, 2020).

**Spamhaus Improperly Places Redi's Domain Names on the DBL**

31. Since April 2016, Spamhaus has seemingly intended to, or been recklessly indifferent to, destroying Redi's innocent business through mistakenly and recklessly listing its IP's and domain names on its DBL.

32. Upon information and belief, since April 2016, Spamhaus has not removed all erroneous historical blocks from the lists they maintain.

33. In April 2018, Spamhaus placed Redi's IP addresses on its Spam Block List ("SBL"), which resulted in a dispute with the service provider, loss of its website, and ability to communicate with its customers using email.

34. Despite unblocking the IP addresses, Spamhaus has on four separate occasions blocked Redi's IP addresses, thereby causing significant business interruptions.

35. For instance, also in April 2018, Spamhaus placed Redi's two domain names ("redimail.com" and "redidata.com") on its DBL, which had the effect of "redirecting" legitimate Redi emails to each respective recipients' junk and/or spam folders as opposed to their inboxes.

36. The result was again catastrophic. Indeed, the act essentially shut down the sector of Redi's business that is focused on its email deployment services.

37. Redi immediately requested a removal of those domain names from the DBL.

38. Two months later (June, not the advertised 24 hours), and after repeated requests from Redi, "redimail.com" and "redidata.com" were subsequently taken off the DBL.

39. However, on June 15, 2018—the very same month Redi's domain names were removed from the DBL—"redimail.com" and "redidata.com" were once again placed on the DBL by Spamhaus without notice, comment, or justification.

40. Since that time, Redi has repeatedly requested the removal of its domain names from the DBL.

41. On June 19, 2018, Redi served a demand letter on Spamhaus requesting the removal of its "redimail.com" and "redidata.com" domain names from the DBL. A copy of this June 19, 2018 demand letter is appended hereto as **Exhibit "A."**

42. As is clear from the letter, Spamhaus was notified on the ongoing harm Redi was suffering as a result of its wrongful placement of Redi's domain names on its DBL and gave Spamhaus notice that legal action was forthcoming. *See* Ex. A.

43. Redi did not receive any adequate response to the demand letter.

44. In short, despite Redi's numerous requests to Spamhaus to correct its error and remove the domain names from the DBL, Spamhaus refuses to do so.

45. To be clear, the inclusion of "redimail.com" and "redidata.com" on the DBL is baseless and a complete error. Redi does not engage in any activity that should be blocked and/or that Spamhaus advertises is caught and blocked by its lists.

46. To date, Spamhaus has not explained how Redi can obtain a permanent removal of their domain names from the DBL.

47. To date, Spamhaus has not refrained from arbitrarily adding Redi's IP addresses to the DBL. Spamhaus, in fact, is proactively and subjectively harassing Redi beyond what their algorithms can do.

48. Spamhaus' erratic and destructive business model, which includes adding innocent IP addresses and domain names to its DBL and refusing to remove same, has proximately caused and resulted in significant and irreparable damages to Redi, including, without limitation, lost customers, lost profits, lost business, and lost opportunities.

49. The monetary losses alone, which were over $150,000 in April 2016, now exceed $250,000.

50. Indeed, Spamhaus' actions have interfered with Redi's business practice and threatens the very existence of Redi's email deployment services, a significant facet of Redi's overall business operations.

51. Moreover, Redi's business relationships with various life science clients have been terminated and/or otherwise negatively impacted as a result of Redi's inability to provide approved electronic communications.

52. In addition, Redi's reputation and good will have been almost irretrievably tarnished resulting in even further irreparable damage to Redi.

53. In sum, Spamhaus' wrongful actions have caused such ongoing, prolonged, and irreparable harm to Redi that equitable and injunctive relief are appropriate under the circumstances as well as a monetary damages award.

## FIRST COUNT
### Preliminary and Permanent Injunctive Relief

54. Redi repeats and realleges the allegations contained in the preceding paragraphs as if stated fully herein.

55. As previously alleged, Spamhaus has wrongly and unjustifiably placed "redimail.com" and "redidata.com" as well as related IP addresses on its block lists, which has resulted in Redi's email communications being "redirected" from a recipient's email inbox to a spam or junk folder or otherwise rendered the message undeliverable.

56. Despite numerous requests, Spamhaus has willfully, recklessly, and/or intentionally refused to correct its mistake and/or provide any justification for refusing to do so.

57. Frankly, no legitimate justification can be made since Redi does not engage in any email marketing or the type of bad behavior that Spamhaus advertises its lists protect against.

58. Indeed, Redi has even devoted significant resources since 2016 to ensure that its business operations are entirely compliant with all laws, regulations, and ordinances and offered proof of same to Spamhaus.

59. Spamhaus, however, continues to refuse to permanently remove Redi's domain names from the historical DBL and SBL records.

60. Spamhaus has even ignored a demand letter.

61. As a result of its two domain names being blacklisted by being on the DBL, Redi has suffered significant and irreparable injuries, including, without limitation, the loss of good will, reputational damage, and the near complete cessation of a key and integral part of its business – email deployment services.

62. The foregoing harms are not compensable by monetary damages or adequately addressed by any remedy at law.

63. Accordingly, an award of preliminary and permanent injunctive relief are entirely appropriate under these circumstances.

64. This is particularly true given that, upon information and belief, there is no harm to Spamhaus in removing "redimail.com" and "redidata.com" from its DBL and the public has no interest in the wrongfully characterizing businesses as peddling spam.

**WHEREFORE**, plaintiff, Redi-Data, Inc., demands judgment against defendant, The Spamhaus Project a/k/a The Spamhaus Project Ltd., as follows:

(a) The entry of judgment in Redi's favor and against Spamhaus on this count of the complaint;

(b) The issuance of a preliminary injunction requiring Spamhaus to immediately remove the "redimail.com" and "redidata.com" domain names from its DBL (as well IP's on its SBL) during the pendency of this lawsuit;

(c) The issuance of a permanent injunction requiring Spamhaus to immediately remove the "redimail.com" and "redidata.com" domain names from its DBL (as well IP's on its

SBL) and further requiring Spamhaus to issue a press release or other notice acknowledging to its customers, subscribers, and/or the general public that the inclusion of the foregoing domain names on the DBL was done in error;

    (d) The entry of an Order prohibiting Spamhaus from relisting the "redimail.com" and "redidata.com" domain names on its DBL's and IP's on its SBL's without prior notice to Redi of its intention to do so along with a detail description of Spamhaus' rationale and justifications for same and only after also providing Redi with 14 days to cure any alleged issues identified by Spamhaus;

    (e) The entry of an Order permitting this Court to retain jurisdiction over any issues related to this injunction; and

    (f) The award of any further relief that this Court deems just and appropriate under the circumstances.

## SECOND COUNT
### (Interference With Prospective Economic Advantages and/or Business Relations)

65. Redi repeats and realleges the allegations contained in the preceding paragraphs as if stated fully herein.

66. Redi had both existing relationships with life science companies as well as prospective relationships with various life science companies involved in pharmaceutical companies and medical device sales throughout the United States.

67. Upon information and belief, Spamhaus was aware of these relationships by operation of the fact that it listed the "redimail.com" and "redidata.com" domain names on its DBL (as well IP's on its SBL).

68. Upon further information and belief, Spamhaus was certainly notified by Redi's June 19, 2018 demand letter that its actions were interfering with Redi's ability to conduct its business and relationship with life science companies and prospective customers. *See* Ex. A.

69. Despite knowing this, Spamhaus has intentionally and/or maliciously interfered with those relationships by refusing, without justification or comment, to remove the wrongfully included "redimail.com" and "redidata.com" domain names from its DBL (as well IP's on its SBL).

70. As a result of Spamhaus' wrongful conduct, as it was previously notified, Redi's email deployment services have been effectively hamstrung and Redi lost business opportunities, customers, and good will from its customers. Through this count, Redi therefore seeks monetary damages in an amount sufficient to compensate it for these losses.

71. Redi's reputation as an industry leader in this field was also irreparably tarnished.

72. Indeed, Redi's monetary losses in April 2016 – over four years ago – were over $150,000, and that number has only increased.

**WHEREFORE**, plaintiff, Redi-Data, Inc., demands judgment against defendant, The Spamhaus Project a/k/a The Spamhaus Project Ltd., as follows:

(a) The entry of judgment in Redi's favor and against Spamhaus on this count of the complaint;

(b) The award of all compensatory, incidental, and punitive damages allowable under law;

(c) The award of pre- and post-judgment interest;

(d) The award of any and all of Redi's reasonable attorneys' fees and costs of suit; and

(e)     The award of any further relief that this Court deems just and appropriate under the circumstances.

### THIRD COUNT
### (Tortious Interference With Contractual Relationships)

73.     Redi repeats and realleges the allegations contained in the preceding paragraphs as if stated fully herein.

74.     At the time Spamhaus improperly placed the "redimail.com" and "redidata.com" domain names and related IP addresses on its DBL and SBL, Redi had existing contractual relationships with life sciences companies and other customers.

75.     Those contractual relationships required Redi to be able to effectively use its email deployment services to provide pre-approved communications to targeted and specific audiences.

76.     However, once Spamhaus wrongfully placed its domain names and deployment domains/IP's on the DBL (and maliciously and/or intentionally kept the domain names on the list) and SBL, Redi's email communications were "redirected" from the intended recipients of those communications to the recipient's spam and/or junk folders and/or were otherwise rendered undeliverable.

77.     This caused Redi to be unable to perform its obligations to its preexisting clients and resulted in the termination and/or breach of certain contracts with those customers.

78.     As a result, Redi lost business opportunities, customers, and good will.  Through this count, Redi seeks monetary damages in an amount sufficient to compensate it for these losses.

79.     Redi's reputation as an industry leader in this field was also irreparably tarnished.

**WHEREFORE**, plaintiff, Redi-Data, Inc., demands judgment against defendant, The Spamhaus Project a/k/a The Spamhaus Project Ltd., as follows:

(a) The entry of judgment in Redi's favor and against Spamhaus on this count of the complaint;

(b) The award of all compensatory, incidental, and punitive damages allowable under law;

(c) The award of pre- and post-judgment interest;

(d) The award of any and all of Redi's reasonable attorneys' fees and costs of suit; and

(e) The award of any further relief that this Court deems just and appropriate under the circumstances.

## FOURTH COUNT
### Defamation

80. Redi repeats and realleges the allegations contained in the preceding paragraphs as if stated fully herein.

81. Spamhaus has no legitimate justification for including Redi's "redimail.com" and "redidata.com" domain names on its DBL (as well IP's on its SBL).

82. Redi has repeatedly requested Spamhaus to remove those domain names from its DBL and offered to provide whatever information Spamhaus requires in order for it to do so. Spamhaus has refused.

83. By placing the "redimail.com" and "redidata.com" domain names on the DBL, Spamhaus has published a defamatory statement about Redi.

84. Indeed, according to Spamhaus' own publicly available website, domain names are listed on the DBL have a "poor reputation" and are generally involved in phishing schemes, fraud, the sending of unsolicited bulk emails, and/or sending malware or viruses to recipients.

85. Thus, Spamhaus has stated to the public, by including Redi's domain names on the DBL, that it is almost certainly engaged in phishing schemes, fraud, the sending unsolicited bulk emails, and/or sending malware or viruses to recipients as well as overall having a poor reputation.

86. As Redi's business is focused on email deployment services and Redi is hired by life science companies, among others, to assist with sending pre-approved communications to targeted audiences and groups, these statements are about Redi's ability to engage in its trade and/or chosen profession.

87. These statements are, however, entirely false and highly prejudicial to Redi. Redi is not engaged in any of those dubious activities.

88. As Spamhaus has repeatedly been advised of the defamatory nature of its assertions and refused to even engage in any discussion about same, these publications are at least negligent are more likely reckless and/or malicious.

89. Although damages for defamation *per se* can be presumed, Redi lost business opportunities, customers, and good will from its customers. Through this count, Redi seeks monetary damages in an amount sufficient to compensate it for these losses.

90. Redi's reputation as an industry leader in this field was also irreparably tarnished.

**WHEREFORE**, plaintiff, Redi-Data, Inc., demands judgment against defendant, The Spamhaus Project a/k/a The Spamhaus Project Ltd., as follows:

(a) The entry of judgment in Redi's favor and against Spamhaus on this count of the complaint;

(b) The award of all compensatory, incidental, special, and punitive damages allowable under law;

(c) The award of pre- and post-judgment interest;

        (d)       The award of any and all of Redi's reasonable attorneys' fees and costs of suit; and

        (e)       The award of any further relief that this Court deems just and appropriate under the circumstances.

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

The undersigned counsel for plaintiff hereby certifies that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Respectfully submitted,

**COLE SCHOTZ P.C.**
Attorneys for Plaintiff, Redi-Data, Inc.


By: _/s/ Jason R. Melzer_____
   Jason R. Melzer
   JMelzer@coleschotz.com
   Elizabeth A. Carbone
   ECarbone@coleschotz.com
   25 Main Street
   Hackensack, New Jersey 07602-0800
   201-489-3000
   201-489-1536  Facsimile