**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| REDI-DATA, INC., | |
|         Plaintiff, | Case No. <br> 2:20-CV-17484-JMV-JBC |
|    -against- | |
| THE SPAMHAUS PROJECT a/k/a THE <br> SPAMHAUS PROJECT LTD., | **Document Electronically Filed** |
|         Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

Alvin C. Lin
(NJ ID No. 017502000)
Jeffrey D. Brooks
(admission *pro hac vice* pending)
MORRISON COHEN LLP
909 Third Avenue
New York, New York 10022
(212) 735-8600

*Attorneys for Defendant*
*The Spamhaus Project S.L.U.*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................... ii

PRELIMINARY STATEMENT ............................................................... 1

STATEMENT OF FACTS ........................................................................ 3

    Defendant The Spamhaus Project S.L.U. .......................................... 3

    Delisting / Removal ........................................................................... 7

    The Spamhaus Project Does Not Block Any Emails
    Nor Does It Prevent Any Emails from Being Sent .............................. 7

    Redi-Data's Allegations .................................................................... 8

    The Spamhaus Project Did Not Aim Its Conduct at New Jersey ...................... 10

ARGUMENT ......................................................................................... 11

I.    The Court Lacks Personal Jurisdiction over The Spamhaus Project ........... 11

    A.    The Court Lacks General Jurisdiction Because The
        Spamhaus Project Is Not Domiciled in New Jersey .......................... 12

    B. The Court Lacks Specific Jurisdiction Because Plaintiff
      Fails to Allege Any Conduct by The Spamhaus Project Directly
      and Expressly Targeted at New Jersey .................................................... 14

CONCLUSION ...................................................................................... 19

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### FEDERAL CASES

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985)........................................................................................14

*Calder v. Jones,*
    465 U.S. 783 (1984)..................................................................................15, 16

*Covenant Bank for Sav. v. Cohen,*
    806 F. Supp. 52 (D.N.J. 1992)......................................................................16

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014)..................................................................................12, 13

*Danziger & De Llano, LLP v. Morgan Verkamp LLC,*
    948 F.3d 124 (3d Cir. 2020) ..........................................................................11

*Display Works, LLC v. Bartley,*
    182 F. Supp. 3d 166 (D.N.J. 2016)................................................................14

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
    564 U.S. 915 (2011)........................................................................................13

*Gucci Am. v. Bank of China,*
    768 F.3d 122 (2d Cir. 2014) ....................................................................12, 13

*IMO Indus., Inc. v. Kiekert AG,*
    155 F.3d 254 (3d Cir. 1998) ..............................................................14, 15, 16

*International Shoe Co. v. Washington,*
    326 U.S. 310 (1945)........................................................................................15

*Koch v. Pechota,*
    744 F. App'x 105 (3d Cir. 2018) ..................................................................13

*Marks v. Alfa Grp.,*
    369 F. App'x 368 (3d Cir. 2010) ..................................................................15

*Marten v. Godwin,*
    499 F.3d 290 (3d Cir. 2007) ....................................................................12, 17

*Minerva Marine, Inc. v. Spiliotes*,
  No. 02-2517 (WHW), 2006 U.S. Dist. LEXIS 13939 (D.N.J. Mar.
  13, 2006) ................................................................................................16

*Narco Avionics, Inc. v. Sportsman's Market, Inc.*,
  792 F. Supp. 398 (E.D. Pa. 1992) .......................................................18

*Time Share Vacation Club v. Atl. Resorts, Ltd.*,
  735 F.2d 61 (3d Cir. 1984) ..................................................................11

*Verify Smart Corp. v. Bank of Am., N.A.*,
  No. 17-4248 (JMV) (JBC), 2021 U.S. Dist. LEXIS 116357 (D.N.J.
  Jun. 17, 2021).......................................................................................11

## STATUTES & RULES

15 U.S.C. § 7701 ........................................................................................5

Fed. R. Civ. P. 12(b)(2)..........................................................1, 11, 12, 19

Defendant The Spamhaus Project S.L.U. (the "The Spamhaus Project")
submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff Redi-
Data, Inc.'s ("Redi-Data") Complaint pursuant to Federal Rule of Civil Procedure
12(b)(2) for lack of personal jurisdiction.

## PRELIMINARY STATEMENT

"Spam" refers to unsolicited bulk email messages.  More than a hundred
billion spam email messages are sent across the Internet each day, and spam emails
can constitute about 85% of the world's daily email traffic.  Studies indicate that
email spam costs legitimate businesses a stunning $20.5 billion every year in both
decreased productivity and in the technical expenses that companies incur in fighting
spam.

The Spamhaus Project is a nonprofit organization based in the Principality of
Andorra that tracks spam emails and related cyber threats and that makes real time,
actionable and highly accurate threat intelligence information available to Internet
networks, ISPs and other Internet users worldwide to assist them in their handling
of spam and other cyber threats.  The Spamhaus Project is a nonprofit organization
created to serve the public interest, and it does not charge a fee to access its data.

Redi-Data is an email marketing company that has engaged in sending spam
emails.  Redi-Data has brought this litigation to seek to silence The Spamhaus
Project and to keep it from fulfilling its mission to help Internet Service Providers

and other Internet users around the world to protect themselves from the scourge of spam. Redi-Data seeks to recover monetary damages from The Spamhaus Project because The Spamhaus Project included in its reputation data on its servers honest and accurate information about Redi-Data's sending of spam email, and then, based on that information, Internet Service Providers and other Internet users who reference The Spamhaus Project's reputation data decided to block Redi-Data's emails or to direct those emails directly to recipients' spam email folders. Redi-Data also seeks to enjoin The Spamhaus Project from reporting on its servers about Redi-Data's spamming activity in the future, without Redi-Data's advance approval. In short, Redi-Data's claims are meritless, and this action is an outrage.

But the Court need not ever reach the merits of this action because this action is not appropriately brought in this Court. This Court lacks personal jurisdiction over The Spamhaus Project. The Spamhaus Project is not domiciled in New Jersey, which defeats general jurisdiction over it as a matter of law. Redi-Data also fails to allege facts sufficient to make a prima facie showing that The Spamhaus Project engaged in conduct intentionally targeted at New Jersey, which defeats specific jurisdiction over it under settled law. Accordingly, Redi-Data's Complaint against The Spamhaus Project must be dismissed for lack of personal jurisdiction.

## STATEMENT OF FACTS

### Defendant The Spamhaus Project S.L.U.

The Spamhaus Project was founded in London in 1998. (Declaration of Stephen John Linford, dated December 22, 2021, ("Linford Decl.") ¶ 3). It was originally incorporated and headquartered in the United Kingdom as a British not-for-profit limited liability company -- The Spamhaus Project LTD. (Linford Decl. ¶ 3). In 2019, however, The Spamhaus Project relocated its headquarters and operations from the United Kingdom to the Principality of Andorra and became a not-for-profit Andorran limited liability company -- The Spamhaus Project S.L.U. (Linford Decl. ¶ 4). The Spamhaus Project is now based in Andorra, with its headquarters and registered Office in Andorra La Vella, Andorra. (Linford Decl. ¶ 4).

The Spamhaus Project is a nonprofit organization that tracks spam emails and related cyber threats such as phishing, malware and botnets, and that provides real time, actionable and highly accurate threat intelligence to Internet networks, ISPs and other Internet users worldwide. (Linford Decl. ¶ 5). The Spamhaus Project is run by a dedicated staff of 38 investigators, forensics specialists and network engineers. (Linford Decl. ¶ 6).

Among other things, The Spamhaus Project maintains a number of DNS-based Blocklists ("DNSBLs").[1]  A DNSBL (commonly known as a "Blocklist") is a database that a provider (such as The Spamhaus Project) creates that lists IP addresses that have been associated with email spam activity.  (Linford Decl. ¶ 7). The Spamhaus Project's DNSBLs are maintained on The Spamhaus Project's servers.  Those servers can be searched in real time by Internet mail servers for the purpose of obtaining an opinion on the origin of incoming email received by those Internet mail servers.  (Linford Decl. ¶ 7).

The role of The Spamhaus Project's DNSBLs is to make available, to Spamhaus users, The Spamhaus Project's opinion on whether a particular IP Address meets The Spamhaus Project's own policy for acceptance of inbound email.  The Spamhaus Project's DNSBL servers respond to many billions of DNSBL queries from the public every day, and the The Spamhaus Project does not charge for access to its DNSBLs.  (Linford Decl. ¶ 8).

---

[1]     "DNS" refers to the "Domain Name System," which is the Internet's system for converting alphabetic names into numeric IP addresses.  For example, when a Web address (URL) is typed into a browser, DNS servers return the IP address of the Web server associated with that name.  In this fictional example, the DNS converts the URL www.company.com into the IP address 204.0.8.51.  Without DNS, one would have to type the series of four numbers and dots into one's browser to retrieve the website.   (Linford Decl. ¶ 7, n.1).

The Spamhaus Project uses the industry standard definition of "spam," which defines spam to mean "unsolicited bulk email" ("UBE").  "Unsolicited" means that the Recipient has not granted verifiable permission for the message to be sent. "Bulk" means that the message is sent as part of a larger collection of messages, all having substantively identical content.  An email message is "spam" only if it is both unsolicited and bulk.   The Spamhaus Project's identification of spam is focused on consent rather than the content of the message.  Whether the Unsolicited Bulk Email ("UBE") message is an advertisement, a scam, pornography or something else is irrelevant to the question of whether it constitutes spam.  If the message is sent unsolicited and in bulk then the message is spam.   Whether the sending of spam is legal or illegal in any particular jurisdiction is irrelevant.  Thus, arguments or assertions as to whether Unsolicited Bulk Email messages are compliant with the requirements set forth in the U.S. "CAN-SPAM Act" (15 U.S.C. § 7701, et. seq.) or other statutes is irrelevant to The Spamhaus Project's identification of spam.  The Spamhaus Project does not evaluate the content or legality of the contents of an email message.  It merely evaluates whether that message constitutes spam by the industry standard definition.  (Linford Decl. ¶ 9).

Among the DNSBLs maintained by The Spamhaus Project is The Spamhaus Block List ("SBL") Advisory, which is a database of IP addresses from which Spamhaus does not recommend the acceptance of electronic mail.  The SBL is

searchable in real time by mail systems throughout the Internet, allowing mail server administrators to identify, tag or block incoming connections from IP addresses which The Spamhaus Project deems to be involved in the sending, hosting or origination of spam. (Linford Decl. ¶ 10). The SBL database is maintained by a dedicated team of investigators and forensics specialists working 24 hours a day to list new confirmed spam issues. IP addresses are listed on the SBL because they appear to The Spamhaus Project to be under the control of, used by, or made available for use by spammers and abusers in unsolicited bulk email or other types of Internet-based abuse that threatens networks or users. (Linford Decl. ¶ 11).

SBL listings are based on evidence which has satisfied the SBL team that the IP address or IP address range meets its listing criteria. But the listings are advisory: they represent The Spamhaus Project's opinion about activity involving that IP address or IP range. Types of abuse that can lead to SBL listings include all aspects of unsolicited bulk email (spam) and other types of security threats. (Linford Decl. ¶ 12).

Another DNSBL maintained by the Spamhaus Project is The Domain Block List ("DBL"). The DBL is a list of domain names with poor reputations. It includes domains which are used in sending unsolicited bulk email or in sending or hosting malware or viruses, as well as other domains with poor reputation due to many heuristics. The DBL is maintained by a dedicated team of specialists using various

data from many sources to craft and maintain a large set of rules controlling an automated system that constantly analyses a large portion of the world's email flow and the domains in it.  Most DBL listings occur automatically.  (Linford Decl. ¶ 13). The DBL is published in a domain DNSBL format on The Spamhaus Project's servers, and it is searchable in real-time, just like The Spamhaus Project's other DNSBLs.  Those running mail server software capable of scanning email headers and message bodies for URIs can use the DBL to identify, classify, or reject mail containing DBL-listed domains.  (Linford Decl. ¶ 14).

### Delisting / Removal

The Spamhaus Project provides procedures for requesting delisting or removal from its DNSBLs.   If the issues that caused the listing are resolved and are sufficiently corrected to prevent further abuse, The Spamhaus Project will remove the relevant IP address or domain from the DNSBL.   (Linford Decl. ¶ 15).

### The Spamhaus Project Does Not Block Any Emails Nor Does It Prevent Any Emails from Being Sent

The Spamhaus Project does not itself block any email traffic or prevent anyone from sending emails on the Internet.  (Linford Decl. ¶ 16).   It is the policies of the particular entity receiving inbound email (the "Receiver") that governs whether particular messages are blocked, delivered, sent to a spam folder, or subjected to additional screening.  Every Internet network that chooses to consult a DNSBL (such as those made available by The Spamhaus Project) as part of its spam

7

filtering process is, by doing so, making its own policy decision governing acceptance and handling of inbound email.  The Receiver unilaterally makes the choices on whether to search DNSBLs, which DNSBLs to use, and what to do with an incoming email if the email message's originating IP Address is "listed" on the DNSBL.  (Linford Decl. ¶ 16).

**Redi-Data's Allegations**

Redi-Data's Complaint purports to assert the following four causes of action against The Spamhaus Project:  (Count I) Preliminary and Permanent Injunctive Relief; (Count II) Interference with prospective economic advantages and/or business relations; (Count III) Tortious interference with contractual relationships; and (Count IV) Defamation.

Each of Redi-Data's four causes of action is premised on allegations that The Spamhaus Project placed Redi-Data's IP addresses and domains on certain of its DNSBLs without cause.

Specifically, Redi-Data alleges as follows:

- On April 6, 2016, The Spamhaus Project added "Redi IP addresses" to its SBL.  (Complaint ¶ 3).

- Since April 2016, The Spamhaus Project has been "mistakenly and recklessly listing [Redi-Data's] IPs and domain names on its DBL." (Complaint ¶ 31).

- Since April 2016, The Spamhaus Project "has not removed all erroneous historical blocks from the lists they [sic] maintain." (Complaint ¶ 32).

- In April 2018, The Spamhaus Project placed Redi's IP addresses on its SBL.  (Complaint ¶ 33).

- The Spamhaus Project "has on four separate occasions" placed Redi's IP addresses on its blocklists.  (Complaint ¶ 34).

- In April 2018, The Spamhaus Project placed the two domain names "redi-mail.com" and "redidata.com" on its DBL. (Complaint ¶ 35).

- Redi-Data requested removal of those domain names from the DBL. (Complaint ¶ 37).

- "Two months later and after repeated requests," The Spamhaus Project removed "redi-mail.com" and "redidata.com" from the DBL. (Complaint ¶ 38).

- On June 15, 2018, "redi-mail.com" and "redidata.com" were once again placed on the DBL.  (Complaint ¶ 39).

- On June 19, 2018, Redi-Data sent a demand letter to The Spamhaus Project requesting removal of its "redimail.com" and "redidata.com" domain names from the DBL.  (Complaint ¶ 41).

9

- Redi-Data "did not receive any adequate response to its demand letter."
  (Complaint ¶ 42).

## The Spamhaus Project Did Not Aim Its Conduct at New Jersey

Contrary to the assertion – made upon "information and belief" -- in the Complaint, The Spamhaus Project is not engaged in continuous activities purposefully directed to New Jersey.  (Linford Decl. ¶ 17).  Nor does The Spamhaus Project do "business in New Jersey by marketing its services to companies located in New Jersey."   The Spamhaus Project conducts no marketing in New Jersey.  (Linford Decl. ¶ 18).

The Spamhaus Project is incorporated in the Principality of Andorra and has its principal place of business there.  (Linford Decl. ¶ 19).    It has no office or employees in New Jersey, and it conducts no business there.  (Linford Decl. ¶ 19).  The Spamhaus Project has not engaged in any activity in New Jersey, and it is not "at home" there.   (Linford Decl. ¶ 20).

The Spamhaus Project had no relationship with Redi-Data and did not know where Redi-Data was incorporated or where its physical headquarters or operations were located.  (Linford Decl. ¶ 21).   Redi-Data itself purports to send its marketing emails across the United States.  (Complaint ¶¶ 13-14). The Spamhaus Project did not know that any alleged harm suffered by Redi-Data would be felt in New Jersey.  (Linford Decl. ¶ 22).

The Spamhaus Project's actions in connection with placing Redi-Data's IPs and domain names on the SBL and the DBL were not actions that The Spamhaus Project aimed or targeted at New Jersey. (Linford Decl. ¶ 23). The SBL and the DBL are not targeted at New Jersey. (Linford Decl. ¶ 23). They are placed on The Spamhaus Project's servers and are available to be searched by anyone in the world with a connection to the Internet. (Linford Decl. ¶ 23).

## ARGUMENT

### I.    The Court Lacks Personal Jurisdiction over The Spamhaus Project.

Federal Rule of Civil Procedure 12(b)(2) permits a party to move to dismiss a case for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). When a defendant challenges personal jurisdiction, "the plaintiff bears the burden to come forward with sufficient facts to establish that jurisdiction is proper." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020) (internal quotation and citation omitted). To meet this burden, "the plaintiff must establish with reasonable particularity that jurisdiction is proper." *Danziger*, 948 F.3d at 129 (citation omitted). Moreover, the plaintiff must establish these jurisdictional facts through sworn "affidavits or other competent evidence." *Verify Smart Corp. v. Bank of Am., N.A.*, No. 17-4248 (JMV) (JBC), 2021 U.S. Dist. LEXIS 116357, at *14 (D.N.J. Jun. 17, 2021); *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984) ("at no point may a plaintiff rely on the bare pleadings alone in order to

11

withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction.")

Personal jurisdiction over a party can be either general or specific. *See Gucci Am. v. Bank of China*, 768 F.3d 122, 134 (2d Cir. 2014) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 126-27 (2014)). "General, all-purpose jurisdiction permits a court to hear any and all claims against an entity. Specific jurisdiction, on the other hand, permits adjudicatory authority only over issues that arise out of or relate to the entity's contacts with the forum." *Gucci Am.*, 768 F.3d at 134 (internal quotation marks, brackets and citations omitted).

Plaintiff's claims against The Spamhaus Project must be dismissed because the Complaint fails to make a prima facie showing that the Court has either general or specific personal jurisdiction over the Spamhaus Project. *See Marten v. Godwin*, 499 F.3d 290, 295-96 (3d Cir. 2007) ("If an issue is raised as to whether a court lacks personal jurisdiction over a defendant, the plaintiff bears the burden of showing that personal jurisdiction exists.").

### A.   The Court Lacks General Jurisdiction Because The Spamhaus Project Is Not Domiciled in New Jersey.

In recent years, the U.S. Supreme Court has significantly narrowed the test for general personal jurisdiction. The current test for general personal jurisdiction is whether the corporate defendant can be deemed to be "at home" in the forum state and, more significantly, a corporation generally will be "at home" only where it has

its principal place of business and where it is incorporated.  *See Daimler*, 571 U.S. at 137-39.  *See also Gucci Am.*, 768 F.3d at 134-35 (applying *Daimler* and holding that foreign bank, which had only four branches in the United States and conducted only a "small portion of its worldwide business" in New York, was not subject to general personal jurisdiction in that forum).

Applying this analysis to The Spamhaus Project, it is beyond dispute that The Spamhaus Project is not subject to general personal jurisdiction in New Jersey.  The Spamhaus Project is incorporated in the Principality of Andorra and has its principal place of business there.  (Linford Decl. ¶ 4).  It has no office or employees in New Jersey, and it conducts no business there.  (Linford Decl. ¶¶ 17-18).  The Spamhaus Project has no connection with New Jersey, and it certainly has no connection with New Jersey "so continuous and systematic as to render it essentially at home" there. *See Daimler*, 571 U.S. at 139 (internal quotation marks and brackets omitted; citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

This Court, therefore, has no basis for asserting general personal jurisdiction over The Spamhaus Project.  *See Koch v. Pechota*, 744 F. App'x 105, 110-11 (3d Cir. 2018) (affirming dismissal of non-domiciliary defendant for lack of personal jurisdiction and holding that trial court properly denied jurisdictional discovery as futile).

**B.    The Court Lacks Specific Jurisdiction Because Plaintiff Fails to Allege Any  Conduct by The Spamhaus Project Directly and Expressly Targeted at New Jersey.**

As to specific personal jurisdiction, a federal court "engages in a two-step inquiry to determine whether it may exercise personal jurisdiction": (1) "whether the relevant state long-arm statute permits the exercise of jurisdiction;" and (2) "if so … [whether] the exercise of jurisdiction comports with due process" under the Fourteenth Amendment. *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016) (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998)).   "New Jersey's long-arm statute extends the state's jurisdictional reach as far as the United States Constitution permits, so the analysis turns on the federal constitutional standard for personal jurisdiction." *Id.* (citing *IMO Indus.*, 155 F.3d at 259).  Accordingly, "[i]n New Jersey, this inquiry is collapsed into a single step," and the Court must determine whether "the defendant has constitutionally sufficient 'minimum contacts' with" New Jersey such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *IMO Indus.*, 155 F.3d at 259 (internal citations omitted).  In other words, to establish specific personal jurisdiction, the Due Process Clause requires (1) minimum contacts between the defendant and the forum; and (2) that jurisdiction over the defendant comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

476 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

Where, as here, a non-domiciliary defendant allegedly committed an intentional tort outside the forum, specific jurisdiction exists only if the plaintiff satisfies the "effects test" adopted in *Calder v. Jones*, 465 U.S. 783 (1984). *See IMO Indus.*, 155 F.3d at 259-60 (holding that *Calder* "effects test" applies to intentional tort cases). The Third Circuit has consistently applied the "effects test" narrowly. *Id.* at 264; *accord Marks v. Alfa Grp.*, 369 F. App'x 368, 370 (3d Cir. 2010).

Thus, a plaintiff seeking to establish specific jurisdiction must make an individualized showing that: (i) the "defendant committed an intentional tort" (ii) the "plaintiff felt the brunt of the harm in the forum," and (iii) the "defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *IMO Indus.*, 155 F.3d at 265-66.

The "effects test" is not satisfied merely because the plaintiff's principal place of business is in the forum state or because the plaintiff allegedly suffered injury there. *Id.* at 265. Rather, to satisfy *Calder*'s third prong, the plaintiff must show that the defendant "knew that the plaintiff would suffer the brunt of the harm . . . in the forum" *and* point to specific "behavior intentionally targeted at and focused on the forum." *Id.* at 265-66. "In the typical case, this will require some type of 'entry' into the forum state by the defendant." *Id.* at 265.

Thus, "the crucial aspect of the effects test is that a plaintiff must demonstrate that a defendant expressly aimed its tortious conduct at the forum." *Id*. at 265 (emphasis added). Consequently, in applying *Calder*:

> It is . . . necessary to distinguish between a defendant's acts which: (1) are aimed at a plaintiff who is located in the forum and (2) are aimed at the forum itself. In the first instance, defendant's actions, directed at the plaintiff, have only an unintended effect in the forum, such as economic damage. In the second instance, the defendant performs an act with "the very purpose of having an effect" in the forum. Only the latter kind of intentional act constitutes a purposeful and deliberate contact with the forum which makes it fair and reasonable for the forum to exercise personal jurisdiction. In *Calder*, for example, the Supreme Court specifically found that the allegedly libelous actions "were expressly aimed at California" and not just at the plaintiff in that case.

*Covenant Bank for Sav. v. Cohen*, 806 F. Supp. 52, 56 (D.N.J. 1992) (internal quotations omitted); *see also Minerva Marine, Inc. v. Spiliotes*, No. 02-2517 (WHW), 2006 U.S. Dist. LEXIS 13939, at *20 (D.N.J. Mar. 13, 2006) (distinguishing between an act "aimed at a party who is located in New Jersey" and an act "aimed at New Jersey").

Here, the Complaint fails to plead facts that meet the requirements of the "effects test." There is no allegation that (i) the Spamhaus Project knew that Plaintiff was based in New Jersey, or (ii) that the Spamhaus Project intentionally targeted New Jersey with its alleged conduct. Thus, "even if [this Court] were to assume the truth of all of [the Complaint's] allegations, and assume [Plaintiff] felt the brunt of

16

the harm in [New Jersey], [the Court] still could not find jurisdiction" because "[Plaintiff] fail[s] to allege any specific facts showing a deliberate targeting of [New Jersey]." *Marten*, 499 F.3d at 298 (citation omitted).

The Spamhaus Project did not know that Redi-Data was located in New Jersey or that any harm it suffered would be incurred there.  (Linford Decl. ¶¶ 21-22).  Indeed, even the Demand Letter that Redi-Data's counsel sent to The Spamhaus Project in August 2018 (and that Redi-Data attaches as Exhibit A to the Complaint) does not mention New Jersey or inform The Spamhaus Project that Redi-Data was incorporated and located there.  (Complaint Ex. A).

Of course, even if it had so informed The Spamhaus Project, that would still be insufficient to establish personal jurisdiction over The Spamhaus Project here because nothing about The Spamhaus Project's alleged conduct was directed or targeted at New Jersey.    The Complaint accuses The Spamhaus Project of erroneously placing Redi-Data's IPs and domains on its DNSBLs.  That is the full extent of The Spamhaus Project's allegedly wrongful conduct.[2]  But nothing about the placement of names on its DNSBLs was conduct directed to or targeted at New Jersey.   The Spamhaus Project's SBL and DBL are available to anyone on the

---

[2]    The loose phrasing of the Complaint sometimes tries to imply that The Spamhaus Project itself blocked Redi-Data's emails.  But the specific allegations in the Complaint seem to acknowledge that the Spamhaus Project's only actions were to place IPs and domains on its DNSBLs.

Internet.  (Linford Decl. ¶ 23).  They are not directed to or targeted at New Jersey. (Linford Decl. ¶ 23).  For these reasons, there is no personal jurisdiction over The Spamhaus Project here.  *See Narco Avionics, Inc. v. Sportsman's Market, Inc.*, 792 F. Supp. 398, 408 (E.D. Pa. 1992) (dismissing the complaint due to lack of personal jurisdiction, again emphasizing the "important distinction between intentional activity which foreseeably causes injury in the forum and intentional acts specifically targeted at the forum.") (citation omitted).

This action must be dismissed.

## <u>CONCLUSION</u>

For all of the reasons set forth above, Defendant The Spamhaus Project respectfully requests that the Court grant its motion and dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

Dated:   December 23, 2021

MORRISON COHEN LLP

By:   */s/ Alvin C. Lin*
    Alvin C. Lin
    (NJ ID No. 017502000)
    Jeffrey D. Brooks
    (admission *pro hac vice* pending)
909 Third Avenue
New York, New York 10022
(212) 735-8600
alin@morrisoncohen.com
jbrooks@morrisoncohen.com

*Attorneys for Defendant*
*The Spamhaus Project S.L.U.*

19