Jason R. Melzer (027742003)
Elizabeth A. Carbone, Esq. (116052014)
**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street, P.O. Box 800
Hackensack, New Jersey 07602-0800
201-489-3000
201-489-1536 Facsimile
*Attorneys for Plaintiff, Redi-Data, Inc.*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| REDI-DATA, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>THE SPAMHAUS PROJECT *a/k/a* THE SPAMHAUS PROJECT LTD.,<br><br>        Defendant. | Civil Action No. 2:20-cv-17484-JMV-JBC<br><br>Civil Action<br><br>*Oral Argument Requested*<br><br>**DECLARATION OF THOMAS BUCKLEY IN OPPOSITION TO MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2)** |

I, **THOMAS BUCKLEY**, hereby declare under penalty of perjury, that the following statements are true and correct to the best of my knowledge:

1. I am the Chief Executive Officer of the parent holding company of Redi-Data, Inc. (hereinafter, "*Redi-Data*"). In this capacity, I have knowledge of the facts set forth herein based on my role and review of documents maintained in the ordinary course of business, such as email communications. As such, I am authorized to provide this declaration on Redi-Data's behalf and in opposition to the motion to dismiss filed in this action by The Spamhaus Project *a/k/a* The Spamhaus Project Ltd. (hereinafter, "*Defendant*").

**General Background**

  2. Redi-Data is a corporation that maintains a principal place of business in Fairfield, New Jersey. As described in the complaint, Redi-Data is a multi-channel marketing company focused on the life science industry and delivers relevant authorized communications to U.S.-based health care professionals (hereinafter, "*HCPs*"). In addition, Redi-Data licenses consumer and business lists. Redi-Data offers a full suite of list, mailing, and data services to customers and provides them with lawful direct mail and email communications including government mandatory alerts and warnings concerning medications and medical products to HCPs. These HCPs either have legal contracts with membership organizations that partner with Redi-Data or have consented to receiving communications. Redi-Data is, in fact, licensed by the America Medial Association, American Dental Association, and American Osteopathic Association and reviews all content before executing a marketing program. In addition, every HCP may "opt out" of postal or email communication through the membership organization or with Redi-Data. As far as we can estimate, approximately 3% of these HCPs practice or reside in New Jersey.

  3. For illustrative purposes, Redi-Data's primary business can be clarified by the following example. If a life science company wants or is required to deploy information to medical professionals about side-effects of a medication, that company can employ Redi-Data to engage in email outreach and send email communications to the medical professionals listed in its databases relating to same. Unfortunately, because of Defendant's actions, such communications have been, on several occasions in the past, improperly classified as "spam" and then redirected so that the recipient never sees the email.

4. As the foregoing illustrates, Redi-Data's business is entirely dependent on its ability to gather and disseminate information through email to specific and targeted audiences. Redi-Data prides itself on complying with all requirements and obligations set forth in the U.S. CAN-SPAM Act, 15 U.S.C. § 7701, *et seq*. Other than by Defendant, Redi-Data has neither been accused of sending spam nor removed from any internet service provider for violating any authorized use or services policies.

5. Notwithstanding this, since 2016, Defendant has been listing, incorrectly, Redi-Data's Internet protocol addresses ("*IP address*") and domain names on its Spam Block List ("*SBL*") and Domain Block List ("*DBL*"). The effect of this has been devastating to Redi-Data and has both harmed the company and detrimentally affected its clients. Each listing results in a disruption of services for all Redi-Data clients – email programs go to spam folders, a lower volume of emails are deployed, emails cannot be deployed, etc. – as well as presents a disruption to Redi-Data's operations as ordinary course inbound and outbound emails are also impacted. While it is unclear at this time how many clients were lost as a result of Defendant's listings, as described below, contracts have been lost, Redi-Data has been forced to change internet service providers and corporate website hosting locations (which required significant IT professional service time and time qualifying and onboarding the new provider among other things), and clients have shifted or moved their programs.

**Defendant's Focus on Redi-Data**

6. Prior to May 2016, some of Redi-Data's IP addresses were listed on Defendant's SBL, some addresses of which were not even being used to deploy any email marketing campaign. Upon this realization, and in accordance with Defendant's removal procedure, Redi-Data contacted Defendant (specifically Defendant's SBL Team) to request a removal from the

3

SBL. Specifically, by email sent on May 4, 2016, Redi-Data requested "details on what we need to provide to resolve this listing. Redi-Data is a valid company selling many services. We want to resolve this issue with you and want to get delisted so if you are able to provide us step details to resolve it that would be good." A copy of this email chain is appended hereto as **Exhibit "A."** In response, Defendant neither requested further information from Redi-Data concerning its business nor did it remove the listing. *See* Ex. A at p. 3. Instead, the next day an agent of Defendant stated only that "[i]n addition to sending unsolicited bulk email (spam), your company offers lists for sale. Spamhaus considers the sales of databases or lists containing email addresses to be a spam support service. We cannot remove this SBL listing as long as your company either spams or provides this or other spam support services." *Id.* Although Redi-Data strenuously attempted to resolve the listing with Defendant and provide information about its business to assuage any concerns, Defendant refused to remove the listing. *Id.* at p. 2 (Defendant's email stating, in relevant part, that "[t]he legality, lack thereof, in your collection of email addresses is not relevant here[]" and, separately, "[w]e routinely list IPs that host websites that are advertised in spam or that advertise spam support services. When we are certain that an entity is a spammer, we also usually list all IPs assigned to that entity[]"). Instead, Defendant's solution was for Redi-Data to essentially cease its business operations because "it is apparent that [Redi-Data] do[es] not view your business as spam. That puts us in a fundamental disagreement. I don't see a way around this." *Id.* at p. 1.

7.     On July 2016, Redi-Data received a letter from Comcast indicating that its internet service was going to be suspended within 30 days if Redi-Data's IP addresses were not removed from Defendant's SBL. Although Redi-Data requested Comcast contact Defendant and resolve the issue, which was our understanding of Defendant's normal procedure (*e.g.*, the

4

Internet service provider would contact Defendant) Comcast refused and Redi-Data once again directly reached out to Defendant.

8. By email sent on September 2, 2016, Redi-Data again requested the removal of the IP address associated with the "redidatainc.com" domain name from the SBL, which Redi-Data noted it removed from its network to resolve the issue. A copy of this email chain is appended hereto as **Exhibit "B."** By way of a response sent on September 3, 2016, Defendant refused to assist Redi-Data, stating, in pertinent part, as follows: "[u]nfortunately we cannot assist you. The spam domains redidatainc.com and redidata.com are registered to your company. There is no way whatsoever for us to determine that those domains and your company are not one and the same without involving Comcast. It is likely that they cannot make that distinction as well." Ex. B at p. 1.

9. As a result, Redi-Data was ultimately forced to move from Comcast to another ISP.[1] Notwithstanding this, Comcast continued to bill Redi-Data for its services for several months thereafter on the grounds that Redi-Data's inclusion on the SBL evidenced that Redi-Data must have breached the terms of Comcast's Acceptable Use Policy and thus was liable for any remaining charges and contract balance.

10. Between April and May 2018, Redi-Data's redimail.com and redidirect.com domain names were listed on Defendant's DBL as well as domain names that were being used in other marketing campaigns, such as one on behalf of Allergen (currently Abbvie). A copy of an email reflecting same is appended hereto as **Exhibit "C."** Extensive work had to be done on

---

[1] Comcast was not the only Internet service provider ("*ISP*") that terminated a relationship with Redi-Data as a result of Redi-Data's IP addresses and/or domain names being on the DBL and/or SBL. Redi-Data was forced to move from Comcast, AT&T, GoDaddy, AWS, and Endurance (specifically, HostGator) between 2016 and 2020, to name a few.

5

behalf of the clients whose marketing campaigns were affected to keep the clients satisfied with Redi-Data, including, without limitation, deployment testing, creating new domain names for clients, and establishing new servers.

11. Defendant also listed during this time Redi-Data's redimail.com domain name on the DBL as well as redidata.com. Copies of these email notifications are collectively appended hereto as **Exhibit "D."** Oddly, at the time there were no marking emails being deployed from the redimail.com domain name. Removals were requested.

12. Indeed, Redi-Data requested the removal of the "redimail.com" domain name from the DBL in June 2018, yet Defendant refused notwithstanding the fact that the removal may have already occurred. A copy of the email refusal is appended hereto as **Exhibit "E."** The refusal provided, in pertinent part, as follows:

> We have reviewed the DBL listing for redimail[.]com and decided that we will retain that listing at this time. We do not discuss criteria for inclusion in DBL, however it includes many factors. Your domain matches several of those criteria. *DBL listings expire over time, so if our systems do not see your domain for a while it will drop out of DBL zone.* Many factors which affect your domain's reputation may also change over time, so by engaging in good reputation practices it will eventually drop out of DBL.
>
> [See Ex. E (emphasis added).]

13. These issues resulted in the blocking of any emails Redi-Data sent to clients and prospective clients, including, without limitation, the domain name update.edu and Ms. Eboni Haynes, to name a few. They even necessitated Redi-Data changing its internal email addresses.

14. The listings also resulted in an issue by and between a company called Silverpop, which was purchased by Internal Business Machines Corporation ("*IBM*"). Redi-Data prepaid Silverpop/IBM to deploy certain emails to physicians on behalf of former client Allergan. However, when Defendant listed Redi-Data's IP addresses, Silverpop/IBM refused to deploy Redi-Data's emails. A copy of an email evidencing same is appended hereto as **Exhibit "F."**

6

At first, Redi-Data attempted to work out the issue with Silverpop/IBM through several meetings and email correspondence. During these communications, Silverpop/IBM made it clear that it was communicating with Defendant in connection with the issue and sharing information it received from Redi-Data with Defendant. For instance, an email sent on May 14, 2018 from an agent of IBM requested "a plan" from Redi-Data on how to move forward as Silverpop/IBM wanted "to review this plan, as well as share it with SPAMHAUS to review." A copy of this email is appended hereto as **Exhibit "G."**

15.  Unfortunately, however, the issues could not be resolved. To rectify the situation, Redi-Data had to offer three months of services to Allergan without charge and lost the business at the conclusion of those three months. At that time, Redi-Data had an annual contract with Allergan that generated about $1 million USD for Redi-Data in email licensing and deployment. On June 19, 2018, Redi-Data served a demand letter on Defendant and its former United States counsel on June 19, 2018. A copy of this demand letter is appended hereto as **Exhibit "H."** Redi-Data also had to commence a lawsuit against IBM in August 2018 in the New Jersey Superior Court, Law Division, Essex County, which settled. A copy of the complaint filed relating to the foregoing in appended hereto as **Exhibit "I."**

16.  Also in 2018, Redi-Data was using Odyssey Services, Inc. ("*Odyssey*"), a telecommunications provider in Tinton Falls, New Jersey. As a result of Redi-Data's IPs being listed on the SBL, which were only removed after Odyssey's intercession with Defendant on Redi-Data's behalf, Odyssey suspended its services and refused to restore them even after the removal. In communications with Defendant, Odyssey was also allegedly advised by Defendant that sending additional unsolicited bulk emails "will result in a blacklist that they will not remove

for up to 6 months." A copy of a November 19, 2018 email with agents of Odyssey and Redi-Data is appended hereto as **Exhibit "J."** This was not the end.

17. On May 7, 2020, Amazon notified Redi-Data that the IP address in Amazon for Redi-Data's website was on the SBL and advising that this violated Amazon's policies and demanded a reply containing the "details of the corrective actions you have taken." Action against Redi-Data was threatened. A copy of this email chain is appended hereto as **Exhibit "K."** On behalf of Redi-Data, on May 11, 2020, Paul Kane responded that same day, disputing the claim. A copy of this email chain is appended hereto as **Exhibit "L."** Three days later Amazon responded by merely referring Redi-Data to Defendant's ROKSO: "[p]lease see Spamhaus additional comments on this listing: [t]his domain offers lists for sale. It also hired another company to spam for it. Neither spamming nor selling lists to others so that they can spam them is remotely acceptable to Spamhaus. Please note, this ip will not be removed if the issue remain unaddressed." *Id.* at p. 3. (quotations omitted). Even though Redi-Data attempted to correct the misapprehension, and placed Defendant on notice that its actions could "potentially adversely affect Redi-Data financially[,]" Defendant, through Amazon, refused to relent. *Id.* at p. 2. Instead, Defendant apparently conceded that the placement on the list was "not put in place because of any direct spam activity….." *Id.* At this time, Amazon, through email, even admitted that organizations like Defendant "are making abuse reports that don't appear valid upon [Amazon's] inspection." *Id.* at p. 1. At bottom, despite Redi-Data's requests and information provided, Defendant did not remove the listing. As a result, Redi-Data removed all servers from Amazon to avoid account and termination of all services.

18. On May 31, 2020, Defendant listed the redidata.com domain name again, requiring all sales associates to remove any reference thereto from their signature blocks and social media posts to avoid any substantial disruption in Redi-Data's business.

19. In October 2020, Redi-Data was notified by HostGator that its Abuse Department received a copy of a Registry of Known Spam Offenders Report (a "*ROKSO*"), a list offered by Defendant, that identified Redi-Data as an allegedly known spam operation. As a result, HostGator permanently suspended Redi-Data's account, which restriction was "not eligible to be removed." The email, which is appended hereto as **Exhibit "M,"** contained what appears to be a copy of the ROKSO as it pertained to Redi-Data. As per the September 30, 2020 entry, Defendant claimed that the domain name redidata.com "sells lists for spam purposes, *as a review of the website will indicate*. List sales are explicitly included as a spam support service on the criteria for listing in the SBL." *See* Ex. M at p. 2 (emphasis added). Apparently, Defendant was independently investigating Redi-Data's website and tracking its operations.

20. Indeed, the ROKSO details IP addresses hosting Redi-Data domain names that have been listed on the SBL since 2016, including, without limitation, a May 6, 2020 listing that indicates redidata.com's new IP address was being listed because "[a]fter *verifying* that redidata.com is still in the list sales business by *checking* their website, Spamhaus is listing the new IP address to protect our users." *See* Ex. M at p. 2 (5/06/2020 [SBL485304] listing]) (emphasis added).

21. Also in October 2020, Redi-Data was also notified by GoDaddy that its account was being suspended as a result of redidata.com being listed on DBL and its associated IP address appearing on the SBL. Although Redi-Data requested GoDaddy reinstate its account, Redi-Data was informed that it would have to contact Defendant before any resolution could occur. A copy

9

of this email response is appended hereto as **Exhibit "N."** Given the difficulty in contacting Defendant and getting any removals from the DBL and/or SBL, Redi-Data was forced to transfer its services to yet another new ISP.

## Conclusion

22. For the reasons stated above, Redi-Data respectfully submits that Defendant has sufficient personal contact with New Jersey and, more importantly, has directed its actionable conduct specifically to Redi-Data, which has suffered harm throughout the years as a result of Defendant's conduct. Accordingly, Defendant's motion to dismiss must be denied and this case proceed.

## **DECLARATION**

I hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing statements are true and correct.

Dated: January 31, 2022

_____
Thomas Buckley, CEO
Redi-Direct Marketing, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and complete copy of the foregoing document has been served on January 31, 2022, via CM/ECF to all counsel of record.

By: */s/ Elizabeth A. Carbone*
*Attorneys for Plaintiff, Redi-Data, Inc.*