UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| REDI-DATA, INC.,<br><br>        Plaintiff,<br><br>-against-<br><br>THE SPAMHAUS PROJECT a/k/a THE SPAMHAUS PROJECT LTD.,<br><br>        Defendant. | Case No.<br>2:20-CV-17484-JMV-JBC<br><br><br><br>**Document Electronically Filed** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

Alvin C. Lin
(NJ ID No. 017502000)
Jeffrey D. Brooks
(admitted *pro hac vice*)
MORRISON COHEN LLP
909 Third Avenue
New York, New York 10022
(212) 735-8600

*Attorneys for Defendant
The Spamhaus Project S.L.U.*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT ........................................................................................................... 2

I.    The Court Lacks Personal Jurisdiction over The Spamhaus Project ............. 2

    A.    Defendant Lacks Sufficient "Minimum Contacts" with New Jersey ............................................................................... 2

    B.    Plaintiff's Claims Do Not Arise from Any Contacts with New Jersey and Imposing Jurisdiction On Defendant Here Would Offend Notions of Fair Play and Substantial Justice ........................................................................ 10

    C.    Plaintiff Fails to Allege Any Tortious Conduct Directly and Expressly Targeted at New Jersey ................................................. 11

II.    Jurisdictional Discovery Would Be Futile ................................................. 14

CONCLUSION ..................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*,
   828 F. Supp. 2d 557 (E.D.N.Y. 2011) ................................................................ 4

*Allstate Motor Club, Inc. v. SHL Systemhouse*,
   No. 97 C 5354, 1998 U.S. Dist. LEXIS 14191 (N.D. Ill. Sept. 1,
   1998) ................................................................................................................... 6

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
   874 F.3d 1064 (9th Cir. 2017) ......................................................................... 12

*Barth v. Walt Disney Parks & Resorts U.S., Inc.*,
   697 F. App'x 119 (3d Cir. 2017) ..................................................................... 15

*Binion v. O'Neal*,
   95 F. Supp. 3d 1055 (E.D. Mich. 2015) .......................................................... 14

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ........................................................................................... 2

*Calder v. Jones*,
   465 U.S. 783 (1984) .................................................................................. *passim*

*Christie v. Nat'l Inst. for Newman Studies*,
   258 F. Supp. 3d 494 (D.N.J. 2017) ............................................................ 12, 13

*Coughlin v. Westinghouse Broad. & Cable, Inc.*,
   689 F. Supp. 483 (E.D. Pa. 1988) .................................................................... 10

*e360 Insight v. Spamhaus Project*,
   500 F.3d 594 (7th Cir. 2007) ............................................................................. 8

*FireClean, LLC v. Tuohy*,
   No. 1:16-cv-0294, 2016 U.S. Dist. LEXIS 96294
   (E.D. Va. July 21, 2016) .................................................................................. 14

*Hanson v. Denckla*,
   357 U.S. 235 (1958) ........................................................................................... 2

*Hsin Ten Enter. U.S. v. Clark Enters.*,
   138 F. Supp. 2d 449 (S.D.N.Y. 2000) ....................................................................4

*IMO Indus. v. Kiekert AG*,
   155 F.3d 254 (3d Cir. 1998) .............................................................................11, 12

*In re Johnson & Johnson Derivative Litig.*,
   865 F. Supp. 2d 545 (D.N.J. 2011) .........................................................................7

*Klausmair Constr., LLC v. Gladden Farm, LLC*,
   No. 5:18-cv-00358, 2018 U.S. Dist. LEXIS 130495
   (E.D. Pa. Aug. 3, 2018)..........................................................................................13

*Lifestyle Lift Holding, Inc. v. Prendiville*,
   768 F. Supp. 2d 929 (E.D. Mich. 2011) ..................................................................5

*Marten v. Godwin*,
   499 F.3d 290 (3d Cir. 2007) ..................................................................................13

*Miller v. Native Link Constr., LLC.*,
   No. 15-1605, 2017 U.S. Dist. LEXIS 131021
   (W.D. Pa. Aug. 17, 2017) .......................................................................................9

*Nordica USA Corp. v. Sorensen*,
   475 F. Supp. 2d 128 (D.N.H. 2007).........................................................................7

*NTE LLC v. Kenny Constr. Co.*,
   No. 14 C 9558, 2015 U.S. Dist. LEXIS 142686
   (N.D. Ill. Oct. 21, 2015)...........................................................................................8

*Radford v. Stollznow*,
   No. 14-cv-0334 SMV/SCY, 2014 U.S. Dist. LEXIS 203685
   (D.N.M. Aug. 5, 2014)............................................................................................3

*Realuyo v. Villa Abrille*,
   No. 01 Civ. 10158 (JGK), 2003 U.S. Dist. LEXIS 11529
   (S.D.N.Y. July 7, 2003), *aff'd*, 93 F. App'x 297 (2d Cir. 2004) ........................13

*Remick v. Manfredy*,
   238 F.3d 248 (3d Cir. 2001) ..................................................................................14

*Stroman Realty, Inc. v. Wercinski*,
   513 F.3d 476 (5th Cir. 2008) ..................................................................................3

*Thomas v. Centennial Communs. Corp.*,
   No. 3:05CV495, 2006 U.S. Dist. LEXIS 92555 (W.D.N.C. Dec.
   19, 2006) ...................................................................................................................7

*Toys "R" Us, Inc., v. Step Two, S.A.*,
   318 F.3d 446 (3d Cir. 2003) ......................................................................................9

*Verify Smart Corp. v. Bank of Am., N.A.*,
   No. 17-4248 (JMV) (JBC), 2021 U.S. Dist. LEXIS 116357 (D.N.J.
   June 17, 2021) ...........................................................................................................3

*Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*,
   75 F.3d 147 (3d Cir. 1996) ........................................................................................2

*Walden v. Fiore*,
   571 U.S. 277 (2014) ............................................................................................. 2, 9

*Weisshouse v. Modulo Cucine LLC*,
   No. 2:12-cv-01899, 2013 U.S. Dist. LEXIS 56917
   (W.D. Pa. Apr. 22, 2013) ..........................................................................................9

*Wilson v. Reliance Ins. Co.*,
   138 F. App'x 457 (3d Cir. 2005) ...............................................................................8

*Young v. New Haven Advocate*,
   315 F.3d 256 (4th Cir. 2002) ...................................................................................11

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
   952 F. Supp. 1119 (W.D. Pa. 1997) .................................................................... 4, 5

## STATUTES & RULES

Fed. R. Civ. P. 12(b)(2) ......................................................................................................1

Fed. R. Evid. 201 ...............................................................................................................7

Defendant The Spamhaus Project S.L.U. (the "The Spamhaus Project" or "Defendant") submits this Reply Memorandum of Law in further support of its Motion to Dismiss Plaintiff Redi-Data, Inc.'s ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

## PRELIMINARY STATEMENT

Plaintiff has failed to meet its burden of establishing that there is personal jurisdiction over Defendant in this action. The Spamhaus Project's Block Lists ("DNSBLs") are made available on its website, which is accessible to anyone anywhere in the world free of charge. Operating a website that is accessible everywhere including New Jersey is not conduct directed at New Jersey or purposeful availment of the protection of the laws of New Jersey. Nor can jurisdiction be premised on the communications initiated by Plaintiff and its ISPs after Plaintiff's domain names were listed on Defendant's DNSBLs. To create jurisdiction, "sufficient minimum contacts" cannot be initiated by the plaintiff but "must arise out of contacts that the defendant himself creates with the forum State." Moreover, the ISPs with which Defendant allegedly communicated were not located in New Jersey.

Plaintiff also fails to satisfy the "crucial aspect" of the "effects test" of *Calder v. Jones*, 465 U.S. 783 (1984), because Plaintiff cannot show that Defendant "expressly aimed" its allegedly tortious conduct at New Jersey. Contrary to

Plaintiff's assertions, it is not enough to allege that the conduct was intentionally aimed at Plaintiff or that Defendant should have known that any harm suffered would be felt in New Jersey. Plaintiff would need to show that Defendant's DNSBLS were targeted toward a potential New Jersey audience so as to defame Plaintiff in New Jersey. The evidence here shows that that was not the case. Thus, Plaintiff's request for jurisdictional discovery should be denied as futile, and the Court should dismiss Plaintiff's Complaint.

## ARGUMENT

**I.      The Court Lacks Personal Jurisdiction over The Spamhaus Project**

**A.      Defendant Lacks Sufficient "Minimum Contacts" with New Jersey**

To establish specific personal jurisdiction, a plaintiff must establish that a defendant "purposefully" directed its activities toward the forum state and the lawsuit "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis in original; quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). There must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150-51 (3d Cir. 1996) (citing *Hanson v. Denckla*, 357 U.S. 235 (1958).

Plaintiff has failed to meet its burden of establishing that its claims arise out of Defendant's purposeful availment of New Jersey.[1] The Spamhaus Project does not do business in New Jersey and conducts no commercial activity anywhere. (Declaration of Stephen John Linford, dated December 22, 2021 ("Linford Decl.") ¶ 18; Declaration of Albert Angus Marin, dated February 11, 2022 ("Marin Decl.") ¶ 5). The Spamhaus Project's DNSBLs are made available on its website and are accessible to anyone anywhere in the world free of charge. (Linford Decl. ¶ 8). Thus, The Spamhaus Project has not "purposefully availed" itself of New Jersey's laws both because it has not conducted activities in New Jersey and because its activities are not commercial.[2]

Plaintiff notes that "Defendant's 'data is today used by the majority of the Internet ISPs, email service providers, corporations, universities, governments and military networks." (Opp. Br. at 8). And that is true, but The Spamhaus Project has no commercial relationships with any such entities. (Marin Decl. ¶ 6). Defendant does not provide commercial services, and it does not have any commercial contracts

---

[1] *See Verify Smart Corp. v. Bank of Am., N.A.*, No. 17-4248 (JMV) (JBC), 2021 U.S. Dist. LEXIS 116357, at *14 (D.N.J. June 17, 2021) (the plaintiff must establish jurisdictional facts through sworn "affidavits or other competent evidence.").

[2] *See, e.g., Radford v. Stollznow*, No. 14-cv-0334 SMV/SCY, 2014 U.S. Dist. LEXIS 203685, at *14-17 (D.N.M. Aug. 5, 2014) (holding that contacts arising from "a non-commercial relationship generally do not evidence a foreign party's intention to purposefully avail herself of a forum state's civil laws and protections.") (citing *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 485 (5th Cir. 2008)).

3

requiring it to provide commercial services. (Marin Decl. ¶ 5). Plaintiff argues that "logically" those who use The Spamhaus Project's website data must include "businesses located or operating in New Jersey and New Jersey residents." (Opp. Br. at 9). But this conjecture is irrelevant because operating a website accessible in a state is not purposeful availment. *See Hsin Ten Enter. U.S. v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000) ("personal jurisdiction over a defendant is not appropriate simply because the defendant maintains a website which residents of New York may visit.").[3]

Next, Plaintiff falsely asserts that Defendant's website is "interactive" and not "passive," arguing that this alleged interactivity "militate[s] in favor of a finding of personal jurisdiction" under the test set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1123-24 (W.D. Pa. 1997). (Opp. Br. at 9). But Plaintiff misrepresents the definitions and the test used the *Zippo Mfg. Co.* case. Under that test, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." 952 F. Supp. at 1124. Thus, under this test, there are no grounds for jurisdiction over The Spamhaus Project because its website is neither

---

[3] *See also A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 569-70 (E.D.N.Y. 2011) ("The existence of a website that can be accessed by New York residents is particularly insufficient to justify the exercise of personal jurisdiction where there is absolutely no degree of commercial activity that actually occurred.") (citation omitted).

commercial nor "interactive." *See Zippo*, 952 F. Supp. at 1124 ("A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction."). Nor does Plaintiff allege that its injury arose from any alleged interactive feature of Defendant's website.[4]

In its opposition brief, Plaintiff also alleges, for the first time, that Defendant offers "a managed DNSBL Datafeed service for a fee" for "users with professional DNSBL-query requirements, such as corporate networks and ISPs." (Opp. Br. at 9). But the "Datafeed" service is not a service offered or sold by Defendant.[5] "Datafeed" is the name for the dedicated high volume data service offered by Spamhaus Technology LTD., which is a British company specializing in managing data distribution and synchronization services for large scale spam filter systems.

---

[4] Plaintiff contends that Defendant's website is "interactive" because "people and entities may contact Defendant through email or Twitter." (Opp. Br. at 9). But that is not the definition of "interactive" used in the case law. *See Lifestyle Lift Holding, Inc. v. Prendiville*, 768 F. Supp. 2d 929, 934 (E.D. Mich. 2011) ("[a] website is passive even when it … displays the company's contact information"). Nor is Defendant's website "interactive" because it contains a news article giving public-service advice on "How hosting providers can battle fraudulent sign-ups" or because it includes a "tool" that permits a user to download suggested text to use in drafting a written "Acceptable Use Policy" for the user's website. Those are not commercial services. (Marin Decl. ¶ 8). Moreover, Plaintiff's claims do not arise from those things.

[5] The fact that the "Datafeed" service is not a service offered by The Spamhaus Project is discernible from the very webpage that Plaintiff attached to its papers. *See* Carbone Decl. Ex. B ("Datafeed is a dedicated data service sold and supplied only by Authorized Datafeed Vendors, independent contractors of Spamhaus Technology …. It is not possible to contract this service from or with The Spamhaus Project.").

5

(Marin Decl. ¶ 9). Spamhaus Technology LTD. is a wholly-independent, separate and distinct legal entity from The Spamhaus Project. (Marin Decl. ¶ 10). Defendant does not own or control Spamhaus Technology LTD, nor does Spamhaus Technology LTD. own or control Defendant. (Id.) Moreover, Defendant does not receive or derive any income from Spamhaus Technology LTD. or from Spamhaus Technology LTD.'s commercial activities, such as the "Datafeed" service. (Marin Decl. ¶ 12). Thus, the commercial activities of Spamhaus Technology LTD. are not activities of Defendant and cannot be used to establish personal jurisdiction over Defendant.[6] *See, e.g., Allstate Motor Club, Inc. v. SHL Systemhouse*, No. 97 C 5354, 1998 U.S. Dist. LEXIS 14191, at *1 (N.D. Ill. Sept. 1, 1998) (dismissing action against Canadian company for lack of personal jurisdiction where the alleged forum contact was a contract entered into by "a distinct and separate entity").

Plaintiff next asserts that "several ISPs operating in New Jersey seemingly utilize Defendant's services and data, including without limitation, Comcast, AT&T, IBM, Silverpop, Amazon, GoDaddy, and HostGator." (Opp. Br. at 11). Those

---

[6] Plaintiff references an "authorized independent contractor for 'North America' called Security Zones." (Opp. Br. at 9, n. 5). But Security Zones is an independent contractor of Spamhaus Technology LTD. Defendant has no commercial relationship with Security Zones. (Marin Decl. ¶ 13). Moreover, Defendant receives no income from Spamhaus Technology LTD's commercial activities. (Id. at ¶ 12). (The Carbone Decl. misrepresents that Carbone Decl. Ex. D, the webpage referencing Security Zones, is from Defendant's website (www.spamhaus.org). It is not. It is from the website of Spamhaus Technology LTD. (www.spamhaus.com).

6

entities may have used Defendant's DNSBLs, but Defendant had no commercial relationship with any of those entities. *See* Marin Decl. ¶ 7 ("The Spamhaus Project has no contractual relationship with and does not provide commercial services to Comcast, AT&T, IBM, Silverpop, Amazon, GoDaddy, HostGator, or to any other entity.")  Moreover, even if Defendant had a commercial relationship with those entities (which it did not), that would not constitute purposeful availment of New Jersey because those companies operate nationwide and Plaintiff has not alleged that any of them are based in New Jersey.[7]  Plaintiff has alleged that those companies are "operating in New Jersey," but doing business with a company that does business in New Jersey does not by itself constitute doing business in New Jersey. *See Nordica USA Corp. v. Sorensen*, 475 F. Supp. 2d 128, 138 (D.N.H. 2007) ("In simple terms, doing business with a company that does business in [New Hampshire] is not the same as doing business in [New Hampshire]."); *Thomas v. Centennial Communs. Corp.*, No. 3:05CV495, 2006 U.S. Dist. LEXIS 92555, at *10-11 (W.D.N.C. Dec. 19, 2006) ("[D]oing business with a company that does business in Minnesota is

---

[7] Indeed, none of those companies is based in New Jersey. Comcast is based in Pennsylvania. AT&T is based in Texas. IBM is based in New York. Silverpop is based in Georgia. Amazon is based in Seattle. GoDaddy is based in Arizona. HostGator is based in Texas and Massachusetts. *See* Declaration of Jeffrey D. Brooks, dated February 14, 2022 ("Brooks Decl.") ¶¶ 3-8, 11-15, Exs. A-C and F-J. The Court can take judicial notice of Brooks Decl. Exs. A-J under Federal Rule of Evidence 201 as facts gathered from "sources whose accuracy cannot reasonably be questioned." *See In re Johnson & Johnson Derivative Litig.*, 865 F. Supp. 2d 545, 550 (D.N.J. 2011).

7

not the same as doing business in Minnesota.").[8]

Plaintiff also asserts that "Defendant also actively investigates businesses, including without limitation New Jersey businesses," (Opp. Br. at 13), by which Plaintiff apparently means that Defendant tracks spamming activity over the Internet, which is not surprising since that is Defendant's *raison d'être*. But there is no allegation here that Defendant's spam-detecting activities were directed at New Jersey, except that Plaintiff alleges that Defendant "certainly investigated Redi-Data." By that, Plaintiff apparently means that Defendant reviewed Redi-Data's public website after Defendant detected Redi-Data's spamming activities. (*See* Opp. Br. at 13). But there is no allegation that Redi-Data's website is located in New Jersey, and even if it were, reviewing such a website is not a contact with New Jersey. *See NTE LLC v. Kenny Constr. Co.*, No. 14 C 9558, 2015 U.S. Dist. LEXIS 142686, at *10 (N.D. Ill. Oct. 21, 2015) ("the act of visiting a website … does not purposefully avail the user of the protection and benefit of the server state's laws.")

---

[8] Plaintiff cites two other actions where jurisdiction has been found over The Spamhaus Project, but those cases have no relevance here. (Opp. Br. at 11-12). In one, The Spamhaus Project was held to have waived its personal jurisdiction defense. *See e360 Insight v. Spamhaus Project*, 500 F.3d 594, 600 (7th Cir. 2007). There has been no such waiver here. In the other, Defendant did not know of the case. Defendant never appeared in the action, and a default judgment was entered. *See* Carbone Decl. Ex. G. That default judgment has no collateral estoppel effect here. *See Wilson v. Reliance Ins. Co.*, 138 F. App'x 457, 459 (3d Cir. 2005) (holding that a default judgment does not meet the requirements of collateral estoppel because the issues were not "actually litigated.")

8

Plaintiff next argues that "Defendant engaged in electronic communications with companies located in or operating in New Jersey." (Opp. Br. at 14) In support of this, Plaintiff notes that "Defendant has communicated both directly with Redi-Data … as well as indirectly with Redi-Data and with ISPs concerning Redi-Data." (Opp Br. at 14). But this argument runs afoul of the rule that "the minimum contacts cannot be created by Plaintiff." *Weisshouse v. Modulo Cucine LLC*, No. 2:12-cv-01899, 2013 U.S. Dist. LEXIS 56917, at *6 (W.D. Pa. Apr. 22, 2013); *see also Miller v. Native Link Constr., LLC.*, No. 15-1605, 2017 U.S. Dist. LEXIS 131021, at *61-62 (W.D. Pa. Aug. 17, 2017) (holding that minimum contacts cannot be unilaterally initiated by plaintiff but "must arise out of contacts that the 'defendant *himself*' creates with the forum State.") (citing *Walden*, 571 U.S. at 284).[9] Here, the cited communications were initiated by Plaintiff, or its ISPs acting as Plaintiff's agents, *after* Plaintiff's domain names appeared on Defendant's Block Lists. *See* Buckley Decl. ¶¶ 6-21.

Notably, aside from Defendant's direct communications with Plaintiff, Plaintiff does not actually allege that any of Defendant's communications were with

---

[9] Moreover, the law is clear that phone calls, emails, similar electronic communication, and letters, even if initiated by the defendant and directed to the plaintiff in the forum State, are not enough for a court to exercise specific personal jurisdiction without a showing of purposeful availment demonstrating that defendant was targeting its activity at the state. *Toys "R" Us, Inc., v. Step Two, S.A.*, 318 F.3d 446, 455 (3d Cir. 2003).

people or entities in New Jersey. Instead, Plaintiff attempts to fudge this issue by referring to companies "located in or operating in New Jersey." But communications with a company that operates nationwide and that is not based in New Jersey are not communications with someone in New Jersey. Indeed, none of the referenced ISPs are based in New Jersey, and there is no allegation (and certainly no evidence) that any part of those communications took place in New Jersey.[10]

### B. Plaintiff's Claims Do Not Arise from Any Contacts with New Jersey and Imposing Jurisdiction On Defendant Here Would Offend Notions of Fair Play and Substantial Justice

Plaintiff has failed to allege that its claims arise from any purposeful availment of the laws of New Jersey. The claims here arise from Defendant's placement of Redi-Data's domains on its Block Lists on its website.[11] It would be patently unfair

---

[10] The emails from IBM/Silverpop were sent from New York City. (Buckley Decl. Ex. G). The emails with Amazon expressly state that they were produced and distributed from Seattle, WA. (Buckley Decl. Exs. K-L). The Buckley Declaration states that Odyssey Services, Inc. is a "telecommunications provider in Tinton Falls, New Jersey." (Buckley Decl. ¶ 16). But Odyssey's headquarters are actually in Toronto, Ontario. Moreover, the communications were with Alan Haines, Odyssey's then Director of IT and Operations, who was based in Toronto. (Brooks Decl. ¶¶ 9-10; Buckly Decl. Ex. J) Comcast is based in Philadelphia. AT&T is based in Dallas. GoDaddy is based in Arizona. HostGator is based in Texas and Massachusetts. (Brooks Decl. ¶¶ 11-15).

[11] Plaintiff asserts that "the mere placement on the DBL and SBL is not, as Defendant suggests, the sum total of the conduct alleged in the Compaint…. To the contrary, Redi-Data alleges that it repeatedly reached out to Defendant to explain directly and through an intermediary, the nature of its business and Defendant's error, yet Defendant refused to explain, reconsider or stop its listings pertaining to Redi-Data on blocklists." (Opp. Br. at 16, n. 9). But the refusal to delete or retract a defamatory statement is not a new tort. *See Coughlin v. Westinghouse Broad. &*

and unreasonable to hold Defendant – a foreign non-profit entity engaged in public service – subject to personal jurisdiction anywhere in the world where an Internet spammer happens to be headquartered. *See Young v. New Haven Advocate*, 315 F.3d 256, 262-63 (4th Cir. 2002) (holding that exercising personal jurisdiction over a defendant because defamatory content on a website was accessible in the forum state would violate traditional notions of fair play and substantial justice).[12]

### C. Plaintiff Fails to Allege Any Tortious Conduct Directly and Expressly Targeted at New Jersey

Plaintiff fails to satisfy the "crucial aspect" of the "effects test" adopted in *Calder v. Jones*, 465 U.S. 783 (1984), because Plaintiff cannot show that Defendant "expressly aimed [its] tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *See IMO Indus. v. Kiekert AG*, 155 F.3d 254, 265-6 (3d Cir. 1998). Plaintiff's spam "marketing" emails that triggered Defendant's placement of Plaintiff's domains on its DNSBLs had been sent nationwide. (Cmplt. ¶¶ 13-14). Defendant's DNSBLs were published on a website available anywhere in the world and were not aimed at New Jersey. (Linford Decl.

---

*Cable, Inc.*, 689 F. Supp. 483, 488 (E.D. Pa. 1988) ("Counsel have not been able to come up with any case in any American jurisdiction which recognizes a claim sounding in damages for failure to retract what is defamatory."). And Plaintiff's claims do not "arise from" Defendant's alleged refusal to retract.

[12] Moreover, Plaintiff is simply wrong to assert that it could not commence a civil lawsuit against Defendant in Andorra. (Opp. Br at 17). The Principality of Andorra is a Western European nation located between Spain and France, and it is a parliamentary democracy, with a fully-functioning independent judiciary.

11

¶ 23). Plaintiff has not alleged that New Jersey has some unique relationship with Plaintiff's professional community. To the contrary, Plaintiff alleges that the listings caused problems for Plaintiff with ISPs based in New York, Seattle, Toronto, Philadelphia, Texas, Massachusetts, and Arizona. (*See* Buckley Decl. ¶¶ 6-21; Brooks Decl. ¶¶ 3-15). Even the tortious interference alleged in Counts II and III concerned Plaintiff's "relationships with life science companies … throughout the United States." (Cmplt. 66).

Plaintiff seeks to rely solely on its allegations that Defendant "targeted" Plaintiff and knew that Plaintiff would suffer damages in New Jersey. Plaintiff argues that "Defendant should have known that its conduct would be felt in New Jersey, which satisfies the third prong of the *Calder* effect test in cases involving the Internet …." (Opp. Br. at 21). But Plaintiff is wrong. That is not the law. *See IMO Indus.*, 155 F.3d at 264 (explaining "the geographical locus of the harm caused" by an intentional tort is only part of the test); *see also Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069-70 (9th Cir. 2017) ("[t]he foreseeability of injury in a forum is not a sufficient benchmark for exercising personal jurisdiction") (citations and quotations omitted).

Plaintiff's reliance on *Christie v. Nat'l Inst. for Newman Studies*, 258 F. Supp. 3d 494 (D.N.J. 2017), is misplaced. In that case, the tort involved was computer hacking, and the court held that using the Internet to hack into the plaintiff's

12

computer in New Jersey was tortious conduct aimed at New Jersey. *Id*. at 503-05. But the underlying tort alleged here is defamation, which is fundamentally different in that it necessarily involves communications with others beyond the plaintiff. The law is clear that defamatory statements from outside the plaintiff's home forum do not create jurisdiction in that forum unless the defamatory statements themselves were expressly aimed at the forum. *See Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) (holding that "effects test" of *Calder* was not met where the allegedly defamatory statements about forum resident were not targeted at the forum).

Thus, here, Plaintiff needed to show that Defendant's Block Lists were directed towards a New Jersey audience, so as to defame Plaintiff in New Jersey. *See Realuyo v. Villa Abrille*, No. 01 Civ. 10158 (JGK), 2003 U.S. Dist. LEXIS 11529, at *30-32 (S.D.N.Y. July 7, 2003), *aff'd*, 93 F. App'x 297 (2d Cir. 2004) (finding no personal jurisdiction where defendant's Internet posting was not directed towards a potential audience in the forum state "so as to defame the plaintiff in the forum state"). "A plaintiff can demonstrate that an Internet post targeted a specific forum by, for example, demonstrating that (i) that the website itself focused on a specific geographic area or (ii) the content of the post targeted a specific geographic area . . . ." *Klausmair Constr., LLC v. Gladden Farm, LLC*, No. 5:18-cv-00358, 2018 U.S. Dist. LEXIS 130495, at *14-15 (E.D. Pa. Aug. 3, 2018) (citations omitted). Here, Plaintiff could not make any such showing. The evidence here

13

establishes that Defendant's website was not in any way focused on New Jersey and that Defendant's Blocklists also were not targeted at New Jersey. Thus, this "crucial aspect" of the *Calder* "effects test" has not been satisfied. *See also Remick v. Manfredy*, 238 F.3d 248, 259 (3d Cir. 2001) (denying personal jurisdiction over defamation claim because the "allegedly defamatory letters and the charges therein were published [by the defendants] throughout the boxing community, not just in Philadelphia.").[13] Because the allegedly defamatory statements here were not aimed at New Jersey, this action must be dismissed.

## II. Jurisdictional Discovery Would Be Futile

Plaintiff's failure to prove personal jurisdiction over the Defendant here does not result from a lack of information. No amount of discovery will change the fact

---

[13] *See also FireClean, LLC v. Tuohy*, No. 1:16-cv-0294, 2016 U.S. Dist. LEXIS 96294, at *5-7 (E.D. Va. July 21, 2016) (finding no personal jurisdiction over non-Virginia resident who posted allegedly defamatory content about plaintiff's product on various websites because neither the websites nor the statements were targeted at a Virginia audience, despite defendant having received the product from plaintiffs in Virginia, and despite allegations that: (a) defendant placed relevant phone calls to plaintiffs in Virginia; (b) servers hosting or transmitting defendant's website were located in Virginia; and (c) plaintiff felt the effects of defendant's conduct in Virginia, where its company was headquartered); *Binion v. O'Neal*, 95 F. Supp. 3d 1055, 1060-61 (E.D. Mich. 2015) (finding no personal jurisdiction over non-Michigan resident who posted allegedly defamatory content on Instagram and Twitter, despite plaintiff's feeling harm in the forum state, and despite defendant having property interests in the forum state, because plaintiff could not establish that defendant's posts were expressly aimed at or disseminated in the forum state, nor was there any allegation that defendant "took affirmative steps to direct the posts to a Michigan audience").

that the alleged defamation was not directed at New Jersey. Defendant's Block Lists were on a website available to anyone in the world. The ISPs who allegedly reacted to those lists were located across the United States and Canada, and Plaintiff's clients and prospective clients were also located across the United States. The categories of information that Plaintiff seeks to discover through jurisdictional discovery are all irrelevant. (*See* Opp. Br. at 23-24). Thus, Plaintiff's request for jurisdictional discovery should be denied as futile. *See Barth v. Walt Disney Parks & Resorts U.S., Inc.*, 697 F. App'x 119, 120 (3d Cir. 2017) (affirming denial of request for jurisdictional discovery, where "jurisdictional discovery would have been futile.").

## **CONCLUSION**

Defendant The Spamhaus Project SLU respectfully requests that the Court grant its motion to dismiss Plaintiff's Complaint.

Dated:   February 14, 2022

                                  MORRISON COHEN LLP

                                  By:   /s/ Alvin C. Lin
                                        Alvin C. Lin
                                        (NJ ID No. 017502000)
                                        Jeffrey D. Brooks
                                        (admitted *pro hac vice*)
                                909 Third Avenue
                                New York, New York 10022
                                (212) 735-8600
                                alin@morrisoncohen.com
                                jbrooks@morrisoncohen.com

                                *Attorneys for Defendant*
                                *The Spamhaus Project S.L.U.*